Argued and submitted January 15, affirmed February 6, reconsideration
denied April 3, petition for review allowed May 7, 1991 (311 Or 349)

STATE OF OREGON,
*Appellant,*

*v.*

LESLIE J. MOELLER,
*Respondent.*

(89-1379; CA A65221 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

GARY ARNOLD MOELLER,
*Respondent.*

(89-1380; CA A65222)

STATE OF OREGON,
*Appellant,*

*v.*

NORMA MAE GALLAGHER,
*Respondent.*

(89-1410; CA A65223)

STATE OF OREGON,
*Appellant,*

*v.*

RONALD JAMES GAZELEY,
*Respondent.*

(89-1411; CA A65224)

STATE OF OREGON,
*Appellant,*

*v.*

GEORGE LIN WARN,
*Respondent.*

(89-1422; CA A65225)

# STATE OF OREGON,
*Appellant,*

*v.*

# KARLA K. WARN,
*Respondent.*

(89-1423; CA A65226)
(Cases Consolidated)

806 P2d 130

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Elizabeth A. Baldwin, Astoria, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Buttler, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendants in these consolidated cases were charged with either possession, manufacture or delivery of controlled substances, in violation of ORS 475.992. The indictments charged, in addition to the underlying offenses, that the crimes "occurred as part of a drug cultivation, manufacture or delivery scheme or network" under OAR chapter 253, division 4, appendix 4 (the rule). *See* OAR 253-04-002(3).[1] Under the sentencing guidelines statutes and rules, that allegation increases the "crime-seriousness" rating of the charged offense and subjects a convicted defendant to a greater "presumptive sentence" than would be the case if the charged offense alone were found. ORS 137.120(2); OAR 253-08-001. Defendants demurred to the indictments on the ground, principally, that the quoted language in the rule is vague and therefore violates the state and federal constitutions. The trial court sustained the demurrers, and the state appeals from the "setting aside" of the indictments.[2]

■ The state first argues that demurrers were not the proper procedural device for raising the issue, because defendants did not challenge the indictments in their entirety and the indictments would continue to state the underlying offenses, even if the challenged language were deleted. The most analogous case is *City of Portland v. Dollarhide,* 300 Or 490, 714 P2d 220 (1986). The court held there that the defendant's challenge to the penalty provision of the ordinance under which she was charged could properly be presented through a demurrer. The court noted, however, that the demurrer also challenged the charging portion of the accusatory instrument, and it suggested that the rationale for allowing a penalty provision to be tested by demurrer was that a

> "defendant charged under a criminal law for which only an allegedly invalid penalty is provided may challenge the penalty pretrial because, if the challenge is successful, the charge will be dismissed and the defendant will not be made to stand trial." 300 Or at 496.

---

[1] The rule, adopted by the State Sentencing Guidelines Board, was legislatively approved by Oregon Laws 1989, chapter 790, section 87.

[2] There were no judgments of dismissal. We nevertheless have jurisdiction over the appeal of orders setting aside the indictments. ORS 138.060(1); *State v. Carrillo,* 311 Or 61, 804 P2d 1161 (1991); *State v. Parker,* 299 Or 534, 704 P2d 1144 (1985).

Although *Dollarhide* can be read to condition its conclusion on there being a challenge to the charge as well as the penalty and on the entire penalty provision being challenged, we do not read it that narrowly. Like the argument here, the defendant's argument in *Dollarhide* and the court's holding were that only part of the penalty provision was invalid, and the court's disposition was a remand for trial on the offense charged, subject to the valid part of the penalty provision. 300 Or at 504-05. These cases are materially identical to *Dollarhide* and, as there, the demurrers were a permissible means of proceeding.

■ The state next argues that, although the "scheme or network" allegation is required by ORS 135.711 to be set forth in the indictment, it is merely a sentencing factor to be decided by the court, rather than an element of an offense to be submitted to the fact finder.[3] Defendants rely on *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981), and *State v. Wedge,* 293 Or 598, 652 P2d 773 (1982), and contend that the "scheme or network" language alleges an element of an offense that is for the jury to decide. The court in *Wedge* held that the "gun minimum" for using or attempting to use a firearm in the commission of a crime, although stated as a sentencing factor in ORS 161.610, presented a question that had to be submitted to the trier of fact. It explained:

"In *Quinn* we stated as a simple principle that facts which constitute the crime are for the jury and those which characterize the defendant are for the sentencing judge. The application of this simple principle is not always so simple. The present fact to be found describes an act in the commission of the crime which determines the maximum penalty to which the defendant is subject. In order to decide whether a jury determination is required in the present case, one must look beyond this categorization. We also said in *Quinn* that facts which go to the criminal acts for which a defendant is to be punished must be proved to a jury's satisfaction unless admitted or waived. *Quinn, supra,* 290 Or at 406.

"The use or threatened use of a firearm is a finding that goes to the criminal act for which this defendant is punished,

---

[3] Neither this issue nor the issue of the permissibility of the demurrers was contested by the state in the trial court. Because we are aware that those issues have arisen in many other pending cases, we address them nevertheless.

and thus is closer to an element of the crime than to a characterization of the defendant. Also, in both *Quinn* and the present case the finding in question is restricted to the one crime at issue in contrast to the post-trial habitual criminal and the sexually dangerous offender proceedings in which the scope of inquiry is not so limited.

"* * * * *

"Although the challenged statute is denominated an enhanced penalty statute, in effect it creates a new crime. The jury only considered evidence offered on the question of first degree robbery, and convicted him of that offense, but the defendant was sentenced on the basis of having been found guilty of the crime of 'first degree robbery using a firearm.' If the legislature had actually described the crime as 'first degree robbery using a firearm' the use of a firearm would certainly be an element and there would be no doubt defendant would have a right to a jury determination of guilt. The legislature cannot eliminate constitutional protections by separating and relabeling elements of a crime." 293 Or at 607-08.

The state attempts to extract these cases from that principle by arguing that the "scheme or network" factor does not "enhance" the range of statutory penalties for the class of the underlying felonies, but simply augments the "presumptive sentence" to be imposed within that range. The distinction is unconvincing. As in *Wedge,* the allegations here of involvement in a scheme or network describe part of the conduct with which defendants are charged; and as in *Wedge,* the allegations have a direct bearing on the *actual* sentence that may be imposed on defendants. The sentencing guidelines make almost academic the fact that, for example, possession of some controlled substances is a class B felony, subject to a "range" of penalties of up to 10 years imprisonment; the meaningful comparison is between the penalty that defendants will actually receive under the guidelines with or without a "scheme or network" finding. The question is for the trier of fact.

■ The remaining question is whether, as defendants contended and the trial court concluded, the phrase "part of a drug cultivation, manufacture or delivery scheme or network" is unconstitutionally vague. The relevant tests are whether the meaning of the phrase is so uncertain or unclear that judges and juries have "unbridled discretion to decide what

conduct" comes within it and that it does not "provide notice of the forbidden conduct." *State v. Cornell/Pinnell,* 304 Or 27, 29-30, 741 P2d 501 (1987). The words "scheme" and "network" are not defined in the statutes or the rule.[4] The state contends, however, that they are words of common usage and should be given their ordinary meaning. To that end, the state relies on the definition of "scheme" in *Webster's New World Dictionary* 1303 (College ed 1968) as "a carefully arranged and systematic program of action; systematic plan for attaining some object"; for "network," the state uses the definition in *Webster's Third New International Dictionary* 1520 (1961) as "an interconnected or interrelated chain, group, or system * * *." The state concludes, on the basis of those definitions:

> "These are drug-related crimes that are part of a system, in one of two ways:
>
> "(1)   They are not isolated incidents, but rather are part of a systematic plan for drug cultivation, manufacture, or delivery composed of a series of related transactions (scheme); or
>
> "(2)   The defendant is part of an interconnected group of individuals or entities engaged together in the cultivation, manufacture, or delivery of drugs (network)."

It is far from clear how the definitions on which the state relies add to the clarity or definiteness of the terms themselves. The problem is not that they communicate *no* meaning; it is that they have too many possible meanings. The definitions may share or even compound that problem.[5] Be that as it may, there is a more fundamental reason for concluding that the phrase is vague.

The state suggests that defendants dwell on the

---

[4] In a commentary on the rule, the Sentencing Guidelines Board offered a list of facts that "among others, may constitute evidence of a 'drug cultivation, manufacture or delivery scheme or network.' " *Oregon Sentencing Guidelines Implementation Manual,* commentary at 13 (1989). The commentary does not have, or purport to have, authoritative status. Moreover, the combination of its express non-comprehensiveness, its indication that the enumerated facts only *may* be probative and the unrelatedness of those facts make the commentary quite unhelpful as a guide to interpretation.

[5] The state also relies on decisions from other jurisdictions, rejecting vagueness challenges to statutes that include the word "scheme" or its variants. Those cases are not apposite, because each concerned a "scheme" to do a particular thing.

words "scheme or network" in isolation and that their meaning becomes clearer, when read in context. We think that the opposite is true. The phrase "part of a drug cultivation, manufacture or delivery scheme or network" is used in the rule to exacerbate the seriousness of three categories of drug crimes: "manufacture/cultivation," "delivery" and "possession." Therefore, it can make involvement in a cultivation, manufacture or delivery *scheme or network* an aggravation of the *offenses* of cultivation, manufacture and delivery. It is impossible to discern from the phrase where the offenses end and where the aggravation begins, what conduct over and above the offenses constitutes the aggravating events or how the words "scheme or network" play into the equation. The phrase is susceptible to an abundance of possible meanings and applications, all or none of which may be the intended ones. On its face, it can refer, *inter alia,* to conspiratorial action, to similar crimes—charged or uncharged—committed as part of the same or different transactions and even to simple recidivism. The phrase does not even communicate with anything approaching certainty or clarity whether it can include only a consummated crime other than the one charged, a substantial step toward commission, mere intent or even conduct that does not amount to any element of a cultivation, manufacture or delivery offense.

The phrase is vague, and we can conceive of no narrowing construction that would not be legislative in character. *See State v. Robertson,* 293 Or 402, 411, 649 P2d 569 (1982). We therefore hold that the phrase violates Article I, sections 20 and 21, of the Oregon Constitution.[6]

Affirmed.

---

[6] We need not reach the federal constitutional question.