Argued and submitted March 11, affirmed November 13, 1991, reconsideration denied January 15, petition for review denied April 28, 1992 (313 Or 210)

## STATE OF OREGON,
*Respondent,*

*v.*

## DAVID RUSSELL BROWN,
*Appellant.*

(C 89-308; CA A63253)

820 P2d 878

Ronald H. Hoevet, Portland, argued the cause for appellant. With him on the brief was Hoevet, Snyder & Miller, P.C., Portland.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant appeals his convictions for manufacturing a controlled substance and on two counts of possession of a controlled substance. ORS 475.992. He contends that the trial court erred when it failed to make findings or conclusions in its denial of his motions to controvert and to suppress, denied his motion to suppress evidence found in the search of his residence, trailer and safe deposit box and convicted him, without sufficient evidence, of manufacturing methamphetamine. We affirm.

On August 17, 1988, police executed search warrants for defendant's residence, trailer and safe deposit box. Deputy Poppen was the affiant for the affidavit in support of the search warrant for defendant's residence and trailer. In the affidavit, he recited his training and experience relating to the investigation of methamphetamine labs and also stated:

"On August 15, 1988, Detectives Dale Frazell and Loren Peterson went to the address of 24491 S. Larkin Rd., Oregon City, Oregon. They went there in an attempt to contact David Brown and interview him regarding a homicide investigation. Detectives Peterson and Frazell said that when they went to the door of the house they smelled a strong odor that they know from training and experience to be associated with the manufacture of methamphetamine.

"Both Detective Frazell and Peterson described the odor as being distinctive and very strong as they were at the door of the house. They told me that even though the house appeared to be sealed, the odor was still extremely strong outside the residence. They told me that no one answered the door or responded to them while they were at the door. The detectives told me that when they did not get any response from anyone at the residence they left the property.

"Detectives Loren Peterson and Dale Frazell are both Deputies of the Clackamas County Sheriff's Department. Detective Loren Peterson has been a police officer for over 23 years and has worked specifically as a narcotics investigator as part of his duties. He has also received training and has participated in search warrants where methamphetamine is being manufactured, sold, and/or used. He is familiar with how methamphetamine is made, packaged, sold, and used.

"Detective Frazell has been a police officer for over 25 years. He has also been involved in narcotic investigations

and has received training on how methamphetamine is man-ufactured, sold, packaged, and used.

"I know from training and experience that when manu-facturing methamphetamine, the process can often take up to 24 hours to complete. I know that during this process a very strong odor is emitted. I also know that the product made in the manufacture of methamphetamine has to be dried before being sold and that this process also emits a very strong and distinct odor. I also know that many of the precursor chemicals used to manufacture methamphet-amine are illegal and that several of these also emit a very strong and distinct odor. I know that after manufacturing the methamphetamine it is often packaged, weighed, and stored for later resale at the location where it is manu-factured.

"Based on Detective Peterson and Frazell's observations while at the above described address they believed that methamphetamine was currently being manufactured there."

In addition, the affidavit included information from several named and unnamed informants.

Deputy Roberts was the affiant for the affidavit for the search warrant for the safe deposit box, which incorpo-rated a copy of the search warrant and affidavit for the search of defendant's residence and trailer. In the affidavit, Roberts set out his training and experience in the investigation of methamphetamine labs and also stated, *inter alia*:

"I know by talking with Deputy Poppen that on 10-26-87 he had a conversation with a Cathy Miller who is a bank employee for the U.S. Bank located at 16115 S.E. 82nd Drive, Clackamas, Oregon. Deputy Poppen told me that Cathy Miller related to him that a David R. Brown comes into the bank she is employed at several times a week and carries white envelopes into the bank and places them into a safe deposit box. Deputy Poppen told me that Cathy Miller felt this to be unusual and very suspicious. She told Deputy Poppen that her supervisor also observed Mr. Brown putting unknown amounts of cash into this safe deposit box.

"I know from talking with Deputy Poppen that he again had contact with Cathy Miller on 8-17-88. Deputy Poppen told me that Cathy Miller told him that she has not seen David R. Brown come into the bank recently.

"On 8-16-88 Deputy Poppen and I obtained a subpoena from the Clackamas District Attorney's office authorized by Deputy District Attorney Johnathan S. Haub. This subpoena requested that U.S. Bank located at 16115 S.E. 82nd Drive, Clackamas, Oregon, release the safe deposit box number under the name of David Russell Brown.

"On 8-16-88 at about 2:35 PM we served this subpoena to Sandra L. Fulcher the assistant manager for the U.S. Bank located at 16115 S.E. 82nd Drive, Clackamas, Oregon. Deputy Poppen and I received a document with the heading "Safe Deposit Signature Card" that reflected the name of David R. Brown with an Oregon driver's license number of 2255232 and an address of 24491 South Larkin Road, Oregon City, Oregon. On this same document it listed a safe deposit box number of 491.

"\* \* \* \* \*

"On 8-17-88 at about 8:09 AM, I assisted in the execution of a search warrant for the residence located at 24491 South Larkin Road, Oregon City, Oregon. Both inside and outside this residence I noted the distinct odor that I know based on my training and experience to be affiliated with the manufacture of methamphetamine and/or phenyl-2-propanone.

"I know from viewing some of the evidence seized at this residence that items such as rifles, handguns, both semi-automatic and full automatic weapons, noise suppressors for firearms, scales, acetic anhydride, PH electrode, PH meters, chemistry books and drug manufacture catalogs, drug records, documents of identification, unknown chemicals, [and] receipts were discovered and seized.

"I know by talking with Detective Loren Peterson from the Clackamas County Sheriff's Department that he assisted in the execution of the search warrant on 8-17-88 for the residence located at 24491 South Larkin Road, Oregon City, Oregon. I know from talking with Detective Peterson that he located what appeared to be a safe deposit key with the number '491' on a ring to this key. Detective Peterson told me that he located this key inside the David Russell Brown residence.

"\* \* \* \* \*

"Based on my training and experience and my observation of the equipment and chemicals seized, I believe that David Russell Brown was engaged in a large scale operation for the purpose of manufacturing methamphetamine and/or phenyl-2-propanone. I know that this laboratory was

designed to produce methamphetamine/phenyl-2-propanone in quantities which far exceed personal use amount.

"I know based on my training and experience that individuals involved in drug trafficking routinely secrete the proceeds in locations such as bank accounts and/or safe deposit boxes.

"I know based on my training and experience that it is common when individuals who are involved in drug trafficking [to] have no legitimate source of income, therefore monies held in checking, saving and/or safe deposit boxes represent income from illegitimate sources.

"I know based on my training and experience that it is common to secrete methamphetamine, drug records, recipes, cash, receipts, business records, letters, vehicle titles, ledgers [and] weapons in locations such as safe deposit boxes to prevent theft from other associates known to the suspect and to prevent seizure by police, or federal agencies such as the Internal Revenue Service, Alcohol Tobacco and Firearms and/or the Drug Enforcement Administration."

Defendant moved to controvert the affidavit in support of the search warrant for his residence and trailer and to suppress evidence found in the search of his property and safe deposit box. The trial court denied the motions. Defendant was convicted by the court in a trial on stipulated facts.

■ Defendant contends that the trial court failed to make findings of fact in connection with his motions to controvert and suppress. According to defendant, the court should have found as fact that the trailer was located on his neighbor's property, not his; that Poppen omitted from his affidavit that deputies had searched defendant's residence in December, 1986, because of an odor associated with the manufacture of methamphetamine and did not find any incriminating evidence; and that one of the named informants had been incarcerated since October, 1986, so he could not have had personal knowledge of the information that Poppen credited to him in the affidavit. Defendant correctly points out that, in a case such as this, the trial court has an obligation to make findings on any issues of disputed facts. *State v. Wise*, 305 Or 78, 81, 749 P2d 1179 (1988). However, we do not need to remand for findings, because the state concedes that the facts are not in dispute. It says that "[t]he issue on appeal is the sufficiency of the search warrant

affidavits in this case, notwithstanding these facts and omissions."

■    Defendant argues that the trial court should have granted his motion to suppress evidence found in his residence for several reasons. First, defendant contends that "[t]he trial court found that Detectives Frazell's and Peterson's observations of a strong odor of methamphetamine at [his] residence on August 15, 1988 was the product of a warrantless search of [his] house." Defendant does not cite any part of the record in which the court made that finding, and we do not find any. Defendant does not give a sufficient reason to controvert the affiant's statements that the detectives smelled the odor "when they went to the door of the house" and that they were at his house "in an attempt to * * * interview him regarding [an unrelated] homicide investigation." Accordingly, we reject defendant's argument.

■    Defendant also contends that information in the affidavit, given by several named and unnamed informants, did not demonstrate probable cause to search his residence. We need not address that contention, because we hold that the information provided by Frazell and Peterson was sufficient to support issuance of the warrant, even if we excise the information provided by the informants. In determining whether the facts in the affidavit are sufficient to have justified the issuance of the warrant, our function is

> "to determine whether a neutral and detached magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched. *See* ORS 133.555(1), (2). We are to construe the supporting affidavit in a commonsense and realistic fashion." *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983).

The information that, from outside defendant's residence, Frazell and Peterson smelled a strong odor that they associated with the manufacture of methamphetamine, together with their training and experience, provided sufficient facts to justify the issuance of the warrant.[1] *See State v.*

---

[1] That information is sufficient, even if we add to the affidavit the information that the state concedes on appeal should have been in it. The state conceded that, in December, 1986, deputies searched defendant's residence on the basis of an odor

*Slowikowski,* 307 Or 19, 761 P2d 1315 (1988); *State v. Heikkinen,* 94 Or App 472, 475, 765 P2d 1252 (1988).

■　　Defendant argues that the trial court should have granted his motion to suppress evidence found in the trailer, because the search warrant did not authorize the search of his trailer and the affidavit did not establish probable cause to search it. His argument that the search of his trailer was not authorized by the warrant is premised on the fact that, at the time the search was executed, the trailer was not within the legal boundary of the street address in the warrant, but on the adjacent landowner's property. Therefore, defendant argues that the officers exceeded their authority under the warrant when they searched the trailer. In response, the state contends that "the trailer was * * * clearly identified as the property of defendant and included in the scope of the premises to be searched."

The warrant authorized the search of:

> "The premises, residence and curtilage located at 24491 S. Larkin Rd., Oregon City, Clackamas County, Oregon. Further described as being a single story red house in disrepair, a red 17' travel trailer, and a barn made of metal type construction being about 20' by 40' in size."[2]

Although the trailer was not within the property line of 24491 S. Larkin Road, it was located only 40 to 50 feet from the residence at the address and reasonably appeared associated with the premises and is specifically and accurately described in the warrant. No fence or other obvious demarcation separated the two properties, and the officers executing the warrant had no reason to believe that the trailer was not within the boundary specified in the warrant. The warrant authorized the invasion of defendant's privacy and his protected

associated with the manufacture of methamphetamine and found no incriminating evidence. That information does not significantly decrease the probability that, on the basis of Frazell and Peterson's information, the police would discover the things specified in the affidavit in defendant's residence, because there is no evidence that Frazell and Peterson supplied the information that led to the search in December, 1986.

[2] The state does not point to any evidence that the affidavit was attached to the search warrant, and we do not find any. Therefore, we do not look to the affidavit for a description of the premises to be searched. *See State v. Davis,* 106 Or App 546, 548 n 1, 809 P2d 125 (1991).

property interest in the trailer. Under the circumstances, we hold that the legal boundary or property line did not circumscribe the officers' authority under the warrant to search the trailer. The search of the trailer was within the scope of the warrant and did not violate defendant's rights under Article I, section 9, of the Oregon Constitution or the Fourth Amendment.

■ Defendant also complains that the affidavit for the warrant to search his premises does not show independent probable cause for the search of his trailer. We disagree. The affidavit alleges, *inter alia,* that it is common practice for manufacturers of methamphetamine to store the precursor chemicals in different locations, because of their dangerous nature. That allegation is sufficient to justify the search of defendant's trailer and other structures evidently being used in connection with his occupancy of the premises. *See State v. Anspach,* 298 Or 375, 381-82, 692 P2d 602 (1984); *State v. Villagran, supra; State v. Shutvet,* 105 Or App 97, 803 P2d 287 (1990), *rev den* 311 Or 427 (1991).

■ Defendant next argues that the affidavit in support of the search warrant for his safe deposit box did not establish probable cause to search it, because "[t]he only information in the affidavit concerning the content of the safety deposit box was ten months old." However, the affidavit also contained information that defendant was engaged in manufacturing methamphetamine at his residence at the time that the affidavit was made and, on the basis of the affiant's training and experience, he knew that it is common for persons involved in manufacturing methamphetamine to keep certain incriminating evidence and proceeds associated with that crime in safe deposit boxes. The magistrate could reasonably conclude from the information in the affidavit that there was probable cause to believe that the box contained the items described in the affidavit, notwithstanding the fact that the bank employee had not seen defendant use the box near the time of the search.

■ Finally, defendant contends that the evidence is not sufficient to support his conviction for manufacture of a controlled substance. He concedes that the evidence shows that, on or about August 17, 1988, he possessed precursor

chemicals, laboratory equipment, formulas and other materials necessary to produce methamphetamine. He argues that the statutory definition of manufacture in ORS 475.005(14) does not specifically include an attempt to engage in the proscribed conduct. He asserts that, in the absence of evidence that his activities during the period alleged in the indictment resulted in his actual production or possession of methamphetamine, he cannot be convicted of manufacture of a controlled substance. We disagree.

ORS 475.005(14) provides, in part:

> " 'Manufacture' means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container * * *."

The legislature's express use of "production, preparation, propagation, compounding, conversion or processing" in the statutory definition of the crime demonstrates clearly that the legislature intended to prohibit not simply possession of the controlled substance created by the prohibited means, but those acts that ultimately will result in the creation of a controlled substance. Defendant's possession of precursor chemicals, laboratory equipment, formulas and other materials necessary to produce methamphetamine constituted "preparation" and, thus, "manufacture" under the statute. The trial court correctly found defendant guilty of the manufacture of a controlled substance.

Affirmed.