Argued and submitted June 30, reversed and remanded for new trial October 6, 1993

# STATE OF OREGON,
*Respondent,*

*v.*

# DANIEL WILLIAMS,
aka Angelo Gordon,
*Appellant.*

## (C90-08-34424; CA A69491)

860 P2d 860

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals from a conviction for delivery of a controlled substance. ORS 475.992. He makes three assignments of error. We reverse.

■ Defendant assigns error to the disallowance of his demurrer to the indictment that charged him with delivery of a controlled substance as part of a drug cultivation, manufacture or delivery scheme or network and possession of a controlled substance as part of a scheme or network. The trial court overruled the demurrer but held that the "scheme or network" factors would not be submitted to the jury but would be considered at the time of sentencing. The jury found defendant guilty of both possession and delivery of a controlled substance. Before defendant's sentencing, we held that the scheme or network factors were unconstitutionally vague. *State v. Moeller*, 105 Or App 434, 806 P2d 130, *rev dismissed* 312 Or 76 (1991). At sentencing, the court "merged" the possession count into the delivery count and treated the conviction as one for "simple" delivery. ORS 475.992. The trial court did not err when it refused to dismiss the indictment. *See State v. Ferrell*, 315 Or 213, 843 P2d 939 (1992).

Defendant also assigns error to the court's decision to limit *voir dire* to 40 minutes per party. Before the selection of the jury, the court informed the parties that the examination would be restricted to 40 minutes for each party. Defense counsel objected to that procedure.[1] After the venire panel

---

[1] The following colloquy occurred between defense counsel and the court:

"DEFENSE COUNSEL: Well, I understand the Court's position, but I do want to take exception to this procedure, for the record, and you know, if the system's overloaded with cases, I'm not sure that my client should bear that bur — procedural burden. And I'm concerned that he is, and that this may interfere with his ability to get a fair trial. Particularly, if I don't have adequate time to fully voir dire the jury, and — And I'm beginning to think that I'm going to be time pressured in this, and I want an opportunity to inquire of each juror, individually, as to whether, you know, they have any bias and prejudice in this case. And I certainly hope that these scheduling problems aren't going to interfere with that.

"COURT: Well, [defense counsel], I'm going to give you the usual amount of time, and if we have to go into tomorrow to pick the jury, we will. You'll have the same amount to time that —

"DEFENSE COUNSEL: What amount to time would that be?

"COURT: — are accorded. In a felony case, I permit 40 minutes per side for questioning.

was sworn, the court provided some preliminary information to the panel and asked introductory questions concerning knowledge of defendant, counsel or any of the witnesses. The court then asked each juror to respond individually to approximately nine questions.[2] Defense counsel then asked general questions of the entire panel for 16 minutes before the court adjourned. The next day, defense counsel renewed his objection to the time limit.[3] He then continued his examination for

---

"DEFENSE COUNSEL: Okay. I can't — Of course, at this time, I can't, for the record, say that that's an adequate amount of time. And —

"COURT: I'm not asking you to do that. I'm simply telling you that you will have that amount of time, and that is the amount of time that all of the lawyers in the — felony cases are getting. There are certainly certain extraordinary cases where I would consider additional time, and we — you know, I don't think we've had a problem — maybe I've had one lawyer over the course of the years who has complained that that wasn't an adequate amount of time. So, I don't think that's going to be a problem."

[2] Apparently, the questions, which were written on a board, were:
1) name;
2) occupation and education;
3) area of residence;
4) name of individuals who reside with the juror, their occupation, and the occupation of any adult children whether or not they live with the juror;
5) whether the juror has ever been the victim of a crime;
6) status of juror as a licensed driver;
7) friends or relatives in law enforcement;
8) prior jury service and if so, was it on a criminal case;
9) hobbies.

[3] The following exchange occurred between defense counsel and the court before the *voir dire* on the second day of trial:

"DEFENSE COUNSEL: The second — I am running into some problems with the time constraints, and perhaps the Court would rather have me address that after we see what we do with the next amount of time. I perceive problems, but then again, I've got 20 minutes, so I don't know for sure at this point.

"COURT: Oh, with the voir dire?

"DEFENSE COUNSEL: Yeah, with the amount of time.

"COURT: You have 20 minutes more. And you should, you know, pick your questions carefully, so that you get what you need to get from them. I would suggest that — Or just make a comment that some of your questions yesterday did not seem to be getting a lot of conversation going, so you might —

"DEFENSE COUNSEL: Well, that's my problem, Your Honor. And I've done the same thing, where it's worked well, and — and sometimes it works well, sometimes it doesn't. We get fresh people every time, and yesterday it really wasn't going well. And perhaps that's my problem, perhaps it was late in the afternoon, but I didn't get a lot of responses, and basically I've worked very hard to make my questions succinct, and to try to address the issues, but I have ten

an additional 28 minutes, when the court informed counsel that he was out of time and ordered him to terminate *voir dire*. Defense counsel asked to be heard, but the trial court denied that request and proceeded to allow the state to conduct *voir dire*.

After the jury was selected, the trial court heard defendant's objection to the time limit for *voir dire*. Defendant noted that the court had allocated him 40 minutes or 96 seconds per panel member, before it knew anything about the case. He further argued that he had not been given time to question panel members adequately about their background and how that might have an impact on examination about racial bias. Defendant is African-American and the venire panel did not contain an African-American. He also said that he wished to inquire about the impact of certain facts peculiar to the case that could cause the jury to prejudge the case without hearing all the evidence.

▮▮  We review the court's restriction of *voir dire* for an abuse of discretion. *State v. Barnett*, 251 Or 234, 445 P2d 124 (1968). The purpose of *voir dire* is to ascertain the existence of grounds for a challenge for cause and to enable litigants to

---

substantive areas I wanted to address, plus seven specific jurors I need to question as a result of their responses to your questions.

"I think I've only — yesterday was able to just get through three of the substantive areas that I wanted to address, and you know, I'd note that 40 minutes with a panel of 25 give[s] me one point six minutes per juror. I'm concerned that we have two, somewhat — two situations of concern here. One is, this is a drug case, and that's a highly publicized thing in this society. *Two, we have a black Defendant, and there is not one black person on the entire jury, and I do want to talk about that. The Defendant's very concerned about that.* And thirdly, I just do not see how good voir dire can be accomplished when you've got one point six minutes per person to try to find out if they're fair, impartial, and even excusable for cause, or by pre-empt.

"So, I just want to express those concerns, and I am taking exception to the time limit now, and will take exception again, if I don't get my goals accomplished [*sic*] in the time allotted.

"COURT: Well, I suggest you move a little more quickly when you're not getting the kind of response that you're hoping for, move on, perhaps, to more specific questions so that they can zero in on what you're talking about. I think that might work a little bit better with this panel.

"I agree with you, that they weren't real forthcoming, but it may be partly the kind of question you're asking may be a little tougher for them than something a little more specific, or a little more directed at particular people.

"DEFENSE COUNSEL: I'll take that approach, Your Honor, and see what happens." (Emphasis supplied.)

obtain enough information to make an intelligent decision whether to exercise a peremptory challenge. *State v. Nefstad*, 309 Or 523, 526, 789 P2d 1326 (1990).

In *State v. Barnett, supra*, 251 Or at 237, the court said:

> "The scope of voir dire examination is in the trial court's discretionary power to efficiently and expeditiously conduct the trial. In exercising that power, the trial court can consider, among other factors, whether counsel has had the opportunity to question sufficiently upon a certain subject or whether the question has any reasonable relevance to the venireman's qualifications or possible prejudices. *The trial court cannot, however, in the exercise of its discretion prohibit counsel from seeking information about prospective jurors which is obviously relevant.*" (Emphasis supplied.)

■■ So far as we can determine, this case is one of first impression in Oregon, because it deals not with the prohibition of a particular subject of *voir dire*, but with a time restriction. In considering whether the trial court abused its discretion in limiting *voir dire* in this respect, we consider, among other factors, (1) the extent of the court's initial examination of the venire panel; (2) whether defense counsel attempted to prolong the *voir dire*; (3) whether the questions defense counsel was not permitted to ask were proper *voir dire* questions; and (4) whether defense counsel was permitted to examine prospective jurors who actually served on the jury. *See People v. Rodriguez*, 786 P2d 472 (Colo App 1989); *Lucas v. State*, 499 NE2d 1090 (Ind 1986); *Salazar v. State*, 107 Nev 982, 823 P2d 273 (1991); *McCarter v. State*, 837 SW2d 117 (Tex Cr App 1992). This list is not exclusive, nor does any single factor control the finding of whether the court abused its discretion. The determination is to be made on a case-by-case basis.

■ The court's initial questioning provided only general background information concerning the panel. Moreover, defense counsel had to repeat questions that were not fully answered by individual panel members and was required to have at least one panel member explain his answer to a particular question. Although defense counsel attempted to ask several panel members an improper question, and his initial questioning of the panel was not a model of brevity, the

record does not demonstrate that he abused or prolonged the selection process by improper questions.

Most importantly, defense counsel was entitled to further question prospective jurors about racial bias. *See Ham v. South Carolina*, 409 US 524, 93 S Ct 848, 35 L Ed 2d 46 (1973). This principle applies, particularly in the light of the fact that, at the time the court terminated defense counsel's *voir dire*, one panel member had just been dismissed for racial bias. Thus, the information that counsel sought to inquire about was clearly relevant to the selection of the jury, and the allowance of less than two minutes to make inquiry of each juror about a subject like racial bias with all of its subtleties is hardly adequate.[4] Moreover, the record indicates that, although defense counsel received some individual responses from unidentified jurors during his examination of the entire panel, he questioned individually only six of the twelve jurors who ultimately were impaneled. In the light of these facts, the limitation on *voir dire* did not adequately provide defense counsel with the opportunity to ascertain the existence of grounds of a challenge for cause or to obtain enough information to make an intelligent decision about whether to exercise a peremptory challenge.

We conclude that the trial court abused it discretion when it ended defense counsel's *voir dire* after 44 minutes. We do not hold that time limits cannot be imposed nor do we express any opinion concerning the appropriate limitation of examination set by a trial court in general. Our holding is specific to the facts of this case.

Because of our disposition, we need not address defendant's argument that the court erred in imposing a departure sentence.

Reversed and remanded for new trial.

---

[4] The state argues that, because defense counsel failed to demonstrate a "specialized need for further inquiry" into the issue of racial bias, the court did not abuse its discretion. In the light of the fact that one juror had just admitted that defendant's race "would be a little bit of a problem," we disagree. Moreover, the court's decision not to hear defense counsel's argument during the *voir dire* process rendered such a showing moot.