STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MERRILL WAYNE RANKINS,
*Defendant-Appellant.*

Lane County Circuit Court
201209098; A154629

382 P3d 530

Josephine H. Mooney, Judge.

Peter Gartlan, Chief Defender, Office of Public Defense Services, argued the cause and filed the brief for appellant.

Anna M. Joyce, Solicitor General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Tiffany Keast, Assistant Attorney General.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

**DUNCAN, P. J.**

Defendant appeals the trial court's judgment convicting him of delivery of heroin, as a commercial drug offense (Count 1), ORS 475.850 and ORS 475.900(1)(b), and possession of heroin (Count 2), ORS 475.854. On appeal, defendant assigns error to the trial court's conclusion that the state presented sufficient evidence to establish that the delivery constituted a commercial drug offense. In order to establish that an offense is a commercial drug offense, the state must prove that the offense was accompanied by at least three of the 11 factors listed in the commercial drug offense statute, ORS 475.900(1)(b). In this case, one of the three factors that the state alleged was that defendant "was in possession of drug transaction records or customer lists." ORS 475.900(1)(b)(E). In support of that allegation, the state presented evidence of text messages sent and received by defendant, and contended that they constituted drug transaction records. Defendant moved for a judgment of acquittal on the commercial drug enhancement, asserting that, because, as a matter of law, the text messages do not constitute drug transaction records, the state had failed to prove three enhancement factors. The trial court denied the motion and convicted defendant as charged.

On appeal, defendant renews his claim that the text messages do not constitute drug transaction records. Defendant's claim requires us to interpret the meaning of "drug transaction records" as used in ORS 475.900(1)(b)(E). As explained below, we conclude that the legislature intended the term "records" to mean intentionally retained notations regarding events, and that it intended the term "drug transaction records" to apply to notations similar to business records, that is, records maintained in furtherance of an enterprise conducted over a period of time. Applying that definition to the facts of this case, we further conclude that the text messages at issue do not constitute drug transaction records and, therefore, the trial court erred by denying defendant's motion for a judgment of acquittal on the commercial drug offense enhancement. Accordingly, we reverse defendant's conviction on Count 1 and remand for entry of a judgment of conviction for delivery of a controlled substance

without the commercial drug offense enhancement, remand for resentencing, and otherwise affirm.

## HISTORICAL AND PROCEDURAL FACTS

While defendant was on probation and post-prison supervision, his supervising officer visited him at his studio apartment, accompanied by a detective. The supervising officer asked if he could search defendant's cell phone, and defendant consented. The officer saw three messages sent that same day that related to illegal drug activity: (1) an 11:52 a.m. message to "Happy" stating "got my shit together 120 a g"; (2) an 11:55 a.m. message to "Carol" stating "did u want to cop????????"; and (3) a 2:38 p.m. message from "Happy" stating, "Can i come over for one now pa."

The officer reviewed approximately two days of text messages, and there were more than 10 messages from each day. The three messages quoted above were the only messages that stood out to the officer.

After the officer saw the messages, he advised defendant of his *Miranda* rights and questioned him. Defendant admitted that he had sold heroin to "Happy" for a $40 profit. The detective searched defendant and found $500 in his wallet. The officer also searched defendant's apartment and found a plastic film canister containing a "small chunk" of black tar heroin.

The state charged defendant with unlawful delivery of heroin, as a commercial drug offense, and unlawful possession of heroin. The state alleged that the delivery was "a commercial drug offense" because defendant was "in possession of $300 or more in cash," the delivery was "for consideration," and defendant was "in possession of drug transaction records or customer lists." *See* ORS 475.900(1)(b)(A), (B), (E). Defendant waived his right to a jury and was tried by the court. At trial, the state presented evidence of the text messages and argued that they constituted drug transaction records.[1] Defendant moved for a judgment of acquittal

---

[1] Although the state alleged that defendant was "in possession of drug transaction records or customer lists," the state argued only that the text messages were "drug transaction records"; it did not contend that they were "customer lists."

on the commercial drug offense enhancement, arguing that there was insufficient evidence of the "drug transaction records" factor, because the text messages "are communications, they're not records or lists as those that would be kept in a business." The trial court rejected that argument and convicted defendant as charged.

## ARGUMENTS ON APPEAL

As stated, the issue on appeal is whether the trial court erred by denying defendant's motion for a judgment of acquittal on the commercial drug offense enhancement based on its conclusion that there was sufficient evidence of the "drug transaction records" factor. To resolve that issue, we must first determine the meaning of the term "drug transaction records" as used in ORS 475.900(1)(b)(E), which is a legal question. *See State v. Slovik*, 188 Or App 263, 266-67, 71 P3d 159 (2003) (interpretation of a statutory drug offense enhancement factor is a matter of law). Then, viewing the evidence in the light most favorable to the state, we must determine whether any rational factfinder could have found that the text messages at issue in this case are drug transaction records, which is also a legal question. *See State v. Lupercio-Quezada*, 224 Or App 515, 521-23, 198 P3d 973 (2008) (applying standard).

The parties disagree about the meaning of the term "drug transaction records," as used in ORS 475.900(1)(b)(E). In particular, they disagree about the meaning of the term "records." Generally stated, defendant's position is that, for the purpose of ORS 475.900(1)(b)(E), a "record" is an intentionally retained notation of an event, whereas the state's position is that a "record" is any stored and retrievable information.

In defendant's view, a "record" is "a notation made to denote a historical or ongoing event." Under defendant's definition, a "record" is something that is intentionally retained, generally for future reference. Applying that definition, defendant argues that the text messages at issue in this case do not qualify as records because they were "mere remnants of digital communications, not records that defendant kept as part of a business."

The state argues for a broader definition of "record." It contends that the term "record" includes all stored and retrievable information, regardless of whether the information is intentionally, or even knowingly, stored. Applying that definition, the state argues that the text messages at issue are "records" because they are preserved pieces of information. As the state explained at oral argument, under its definition of "record," the text messages would be drug transaction records, even if defendant had deleted them, so long as they could be recovered, even if only through a forensic examination.

## ANALYSIS

To determine the meaning of "records" for the purposes of ORS 475.900(1)(b)(E), we employ the method of statutory interpretation prescribed by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). That is, we examine "the text in context and, where appropriate, legislative history and other aids to construction." *State v. McDowell*, 352 Or 27, 30, 279 P3d 198 (2012) (citing *Gaines*, 346 Or at 171-72).

We begin with the word "records" itself. When interpreting a statute, "words of common usage typically should be given their plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. "Unless a word is defined by statute or is a term of art, we generally look to the dictionary to determine a word's ordinary meaning." *City of Lake Oswego v. Albright*, 222 Or App 117, 120, 193 P3d 988 (2008).

As defined by *Webster's*, the noun "record" has several meanings, including:

> "1 **a** : the state or fact of being recorded *** **c** (1) : evidence, knowledge, or information remaining in permanent form (as a relic, inscription, document) <the ~ of an extinct people> (2) : an account in writing or print (as in a document) *** intended to perpetuate a knowledge of acts or events **2:** something that serves to record: as **a** (1) : a piece of writing that recounts or attests to something <a ~ of the early history of a nation> *** **b:** something that is known or can be learned or has been recorded: as *** (2) : cumulative data usu. consisting of written

systematically arranged notes relating to an individual's or group's activities, abilities, accomplishments * * * in a particular area (as school, business)."[2]

*Webster's Third New Int'l Dictionary* 1898 (unabridged ed 2002).

Some of the definitions and examples describe intentional memorializations of events, especially for future reference: "an account in writing or print (as in a document) * * * intended to perpetuate a knowledge of acts or events"; "something that serves to record," such as "a piece of writing that recounts or attests to something"; and "something that is known or can be learned or has been recorded," such as "cumulative data usu[ally] consisting of written systematically arranged notes relating to an individual's or group's activities," as might be kept for a business. *Id.* Those definitions and examples are consistent with defendant's interpretation of "record."

On the other hand, the broad definitions—"the state or fact of being recorded," "something that serves to record," and "something that is known or can be learned or has been recorded"—are consistent with the state's view that a "record" is any stored and retrievable information. *Id.*

To determine whether the legislature intended to apply the more specific definition of "record," for which defendant advocates, or the more general one, for which the state advocates, we look to the context in which the legislature used the term. *See State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) (dictionaries state "what words *can* mean, depending on their context and the particular manner in which they are used") (emphasis in original)); *see also State v. Fries*, 344 Or 541, 546-48, 185 P3d 453 (2008) (context determines which of multiple definitions is the one the legislature intended). As we have explained,

"[M]any of the words in our language have several meanings or shades of meaning. However, it does not follow from

---

[2] *Black's Law Dictionary* provides similar definitions. One defines "record" as "[a] documentary account of past events, usu. designed to memorialize those events." *Black's Law Dictionary* 1387 (9th ed 2009). Another defines the term as "[i]nformation that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form." *Id.*

the fact that there are several variations of how a word is defined in the dictionary that all of the variations are pertinent whenever the word is used, or that each variation is an arguably plausible description of what the word means as it is used in a particular statute. The subject and purpose of the statute, together with the statutory language that surrounds the word in question, narrow the array of definitional choices that dictionaries alone afford and go far in identifying the intended meaning of the word as used in the statute."

*Steele v. Employment Dept.*, 143 Or App 105, 113-14, 923 P2d 1252 (1996), *aff'd*, 328 Or 292, 974 P2d 207 (1999). Accordingly, we turn to the context of the term "records" in ORS 475.900(1)(b)(E), including the "subject and purpose of the statute, together with the statutory language that surrounds the word." *Steele*, 143 Or App at 113.

We begin with the subject and purpose of ORS 475.900. As relevant here, ORS 475.900 provides that the base crime category classification for delivery of a controlled substance is crime category four. ORS 475.900(3). The crime category can be elevated to a higher category, which carries a greater presumptive sentence, if the state proves certain factors. For example, if a delivery is of heroin and is "for consideration," its crime category is six. ORS 475.900(2)(a). If the delivery involves "substantial quantities" of drugs or is a "commercial drug offense," its crime category is eight. ORS 475.900(1)(a), (b). A delivery is a commercial drug offense if it is "accompanied by at least three" of 11 listed factors, including that "[t]he offender was in possession of drug transaction records or customer lists." ORS 475.900(1)(b). Thus, the subject of ORS 475.900 is the classification of drug offenses for sentencing purposes, and its purpose is to differentiate between drug offenses based on their seriousness so that more serious offenses carry greater presumptive sentences. As evident from the classifications in ORS 475.900, the legislature regarded a delivery of a controlled substance "for consideration" to be different from, and less serious than, a delivery of a controlled substance that constitutes a "commercial drug offense." The former is a category six crime, and the latter is a category eight crime. The subject and purpose of ORS 475.900 indicate that the legislature

intended the commercial drug offense enhancement factors to help identify drug offenses that are more serious than, for example, a delivery for consideration.

The legislature's use of the term "commercial drug offense" indicates what types of offenses those more serious offenses are. "Commercial" is defined as "of, in, or relating to commerce," and the applicable definition of "commerce" is "the exchange or buying and selling of commodities esp[ecially] on a large scale and involving transportation from place to place—compare TRADE, TRAFFIC." *Webster's* at 456. Because the listed factors, including the possession of drug transaction records, were intended to help identify commercial drug offenses, it is likely that the legislature intended the "records" to be of the type that would indicate involvement in "commerce"—that is, records maintained in furtherance of "the exchange or buying and selling" of drugs, especially on a large scale. *Id.*

The text of the particular factor at issue here—"[t]he offender was in possession of drug transaction records or customer lists"—supports that view. The reference to "customer lists," which are useful for conducting an ongoing enterprise, suggests that the legislature intended the factor to serve as an indication that a drug offender was involved in drug crimes as a business.[3]

That view is confirmed by the legislative history of ORS 475.900. In 1991, the legislature enacted what is now ORS 475.900[4] to replace *former* OAR 253-04-002(3) (Sept 1, 1989), which was part of the Oregon Sentencing Guidelines and classified drug crimes for sentencing purposes. Crime

---

[3] The other factors listed in ORS 475.900(1)(b) provide further support for that view, as they are indicative of an ongoing criminal drug enterprise. They include the possession of weapons, additional packaging materials, stolen property, and manufacturing paraphernalia (including, recipes, precursor chemicals, laboratory equipment, lighting, ventilating or power generating equipment); the modification of structures to facilitate a controlled substance offense (including by painting, wiring, plumbing, or lighting); the use of public lands; and the construction of fortifications or use of security measures with the potential of injuring persons. ORS 475.900(1)(b)(C), (D), (F), (G), (H), (I), (J).

[4] ORS 475.900 was originally numbered ORS 475.996. It was renumbered in 2005.

category 8 drug offenses included those that "occurred as part of a drug cultivation, manufacture or a delivery scheme or network." OAR 253-04-002(3). The rule did not define "scheme or network," but the *Oregon Sentencing Guidelines Implementation Manual* contained a list of factors that could constitute evidence of a "scheme or network." *Oregon Sentencing Guidelines Implementation Manual* 13 (1989). The list included many of the factors now listed in ORS 475.900, including "[t]he presence of drug transaction records or customer lists." *Id.*

The term "scheme or network" was challenged as, and ultimately held to be, unconstitutionally vague in *State v. Moeller*, 105 Or App 434, 806 P2d 130, *rev dismissed*, 312 Or 76 (1991). While *Moeller* was pending in this court, House Bill (HB) 2390 was introduced in the legislature to "fix the vagueness problem." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 11, Side A (statement of Committee Counsel Gregory A. Chaimov). To do so, the bill provided for higher crime category classifications for "commercial drug offenses," which it defined as offenses accompanied by at least three factors from a list, which was based on the list in the *Implementation Manual*. The bill's drafter, Representative Mason, identified the types of drug offenders that the factors were intended to help identify, stating, "[Y]ou can see as you read these factors what they were aiming at; they were aiming at fairly large big-time dope dealing with fortresses and out there in the public lands and with trip guns and that's what they're aiming at." Tape Recording, Senate Committee on Judiciary, HB 2390, May 24, 1991, Tape 188, Side A (statement of Rep Tom Mason). The bill was enacted and is now codified at ORS 475.900.

Thus, the history of ORS 475.900 establishes that the statute was intended to serve the legislature's goal of providing for greater presumptive sentences for certain drug offenses, which were initially described as occurring as part of a "scheme or network" and are now described as "commercial drug offenses." According to the bill's drafter, the commercial drug offense factors are aimed at "fairly large big-time dope dealing." That legislative history supports

the view that the legislature intended "drug transaction records" to be the type of records used in a business.[5]

The legislative history of the term "drug transaction records" itself is limited, but it is consistent with the view that the records are intentionally retained notations regarding drug transactions. During a discussion of the factors, Mason stated,

> "Some of these factors are very damning factors. I tried to defend someone once who was dumb enough to keep drug record transactions [sic]. That's about as deadly as you can get. I'll never forget, this guy said, 'Don't worry, I didn't write "cocaine," I just put a big "C" with quotes around it.'"

Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 12, Side A (statement of Rep Tom Mason). Later, Mason mentioned the factor again, stating:

> "Another factor might be possession of drug records or customer lists—oftentimes these lists are in code, it may take some time to discern whether this is something that could actually be proven to be a drug transaction record."

Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Feb 20, 1991, Tape 31, Side A (statement of Rep Tom Mason). Both of Mason's statements refer to intentionally maintained records. They indicate that the legislature used the term "records" in the record-keeping sense, and that it used the term "drug transaction records" to refer to intentionally retained, perhaps even coded, notations of drug transactions conducted as part of a criminal drug enterprise.

---

[5] That view is also consistent with the state's understanding of what the legislature intended "scheme or network" to mean. For example, in *Moeller*, 105 Or App at 439-40, the state argued that a "drug cultivation, manufacture, or delivery scheme or network" referred to

> "drug related crimes that are part of a system, in one of two ways:
>
> "(1) They are not isolated incidents, but rather are part of a systematic plan for drug cultivation, manufacture, or delivery composed of a series of related transactions (scheme); or
>
> "(2) The defendant is part of an interconnected group of individuals or entities engaged together in the cultivation, manufacture, or delivery of drugs (network)."

Based on the context of the term "records" and the legislative history of ORS 475.900, and of ORS 475.900(1)(b)(E) in particular, we conclude that, because the legislature enacted the "drug transaction records" factor to help identify drug offenders who engage in drug offenses as a business, the legislature used the term "records" to refer to intentionally retained information, including, but not limited to, logs, ledgers, or other organized notes. That is, we conclude that the legislature intended the term "records," as used in ORS 475.900(1)(b)(E), to mean intentionally retained notations of events, akin to business records, although perhaps less formal (and more cryptic), given the illegal nature of the business.

We reject the state's proposed definition of "drug transaction records," which would capture any trace evidence of a drug transaction. It would include any stored and retrievable information regarding a drug transaction, regardless of whether the defendant had intentionally retained it. Indeed, it would include information that the defendant was unaware of or had deleted. For example, it would include voice or text messages that the defendant had not reviewed. And, as the state contended at oral argument, it would include deleted text messages, if they could be forensically recovered. The state's broad definition of "records" is inconsistent with the legislative purpose of ORS 475.900. It would not serve the differentiation function that the legislature intended the factors listed in ORS 475.900(1)(b) to serve.

If, as the state argues, "drug transaction *records*" includes any evidence of a drug transaction, then the legislature could have simply made "possession of drug transaction *evidence*" the factor. But it did not, and reading the factor as the state does would not be consistent with the aim of the legislature, which was to identify factors that would help indicate that a drug offense was a *commercial* drug offense.

The concurrence suggests that the legislature would not have contemplated the distinction we draw between intentionally retained notations regarding drug transactions and recoverable evidence of drug transactions. 280 Or App at 687 (Flynn, J., concurring). We agree that, when

the legislature enacted ORS 475.900(1)(b) in 1991, it would not have contemplated text messages, but we disagree that the legislature would have intended to include all text messages within the definition of "drug transaction records." As discussed, the context and legislative history establish that the legislature used the term "records" in a record-keeping sense. There is no indication that the legislature intended it to include all recoverable information about a drug transaction—be it a note on a piece of scrap paper, a telephone message on an answering machine tape, or a text message on a smart phone—regardless of whether it was intentionally retained. Paper and answering machines existed in 1991, but nothing in the legislature's enactment of ORS 475.900(1)(b) indicates that, when defining the factors to identify commercial drug offenses, the legislature intended "drug transaction records" to include all recoverable notes or messages.[6]

Having concluded that "drug transaction records" are intentionally retained notations, we apply that definition to the facts in this case to review the trial court's denial of defendant's motion for a judgment of acquittal. In determining whether the trial court erred, we view the evidence in the light most favorable to the state; that is, we resolve all disputed facts in the state's favor and give the state the benefit of all reasonable inferences. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995); *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). We then determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. Hamilton*, 186 Or App 729, 731, 64 P3d 1215 (2003).

As described, the evidence regarding defendant's possession of drug transaction records was that defendant's cell phone had three text messages relating to drug transactions. The text messages were created only hours before they

---

[6] The concurrence also asserts that our holding introduces uncertainty in the application of the "drug transaction records" factor because it requires a determination of whether information was intentionally retained. But that determination is no different from others that factfinders are required to make regarding a person's intent, and, given that the legislature used "records" in the record-keeping sense, and record-keeping is an intentional act, it is required. To make the determination, a factfinder would consider any direct or circumstantial indications that particular notations serve a record-keeping function, such as the manner in which they are stored.

were discovered, they were limited in number, and they were not stored in an organized fashion. The officer who searched defendant's phone did not find any other messages that he believed were related to drug transactions. Any inference that defendant was in possession of the text messages for record-keeping purposes would be speculative. The record does not support an inference that the text messages were anything other than the detritus of digital communications.

To be clear, we are not holding that text messages cannot constitute drug transactions records. They can, provided that there is evidence to support a finding that the text messages served a record-keeping function. Evidence that text messages were retained for future reference—for example, messages stored in an organized manner or retained for a long period of time—would support an inference that the messages are records for the purposes of ORS 475.900(1)(b)(E). In this case, however, there is no such evidence.

Conviction on Count 1 reversed and remanded for entry of judgment of conviction for delivery of a controlled substance without the commercial drug offense enhancement; remanded for resentencing; otherwise affirmed.

**FLYNN, J.,** concurring.

I agree with the majority that the legislature did not intend that the term "drug transaction records," as used in ORS 475.900(1)(b)(E), would be construed so broadly as to include deleted text messages and other trace evidence of drug transactions. I also agree with the majority that, properly construed, the term "drug transaction records" does not apply to the three text messages on which the state relies here. I write separately, however, because I disagree with the majority's conclusion that the legislature intended to define the term "drug transaction records" to be dependent upon the defendant's mental state, *i.e.*, on whether the defendant "intentionally retained" the "notations of drug transactions conducted as part of a criminal drug enterprise." 280 Or App at 683.

Before explaining my separate conclusion, an explanation of terminology is needed. As the majority opinion

illustrates, the term "record" has a range of meanings in ordinary usage and no perfect synonym. Thus, in the interest of precision in the language of my opinion, I use the term "records of drug transactions" in the broad sense suggested by some of the *Webster's* definitions that the majority quotes: "**1 a:** the state or fact of being recorded * * * **c** (1) **:** evidence, knowledge, or information remaining in permanent form." *Webster's Third New Int'l Dictionary* 1898 (unabridged ed 2002). I use the term "drug transaction records" to refer to those records that the 1991 legislature would have viewed as sufficient to qualify as an enhancement factor under ORS 475.900(1)(b).

Ultimately, I conclude that the legislature intended a much greater area of overlap between the two terms than is allowed under the majority's construction.

As an initial matter, I do not think the legislature even contemplated the distinction that the majority introduces, between "intentionally retained" records of drug sale communications and otherwise retained records of drug sale communications. The commercial drug offense statute, ORS 475.900[1], was first enacted in 1991. Or Laws 1991, ch 690, § 1. It is not plausible that legislators in 1991 foresaw the paradigm shift to a society in which electronic communication is ubiquitous—communication through a medium that, by its nature, records each communication and, *by default*, retains the record. Without foreseeing a world in which records of drug transactions are retained in a readily retrievable format without any conscious intent on the part of the person retaining them, the 1991 legislature would not have intentionally excluded such records.

Moreover, had the 1991 legislature been asked to clarify whether the intent of the record holder should distinguish "drug transaction records" from mere records of drug transactions, I am convinced that the legislature would have responded "no." I reach that conclusion from my analysis of the text, context, and legislative history of ORS 475.900 (1)(b).

---

[1] In 2005, ORS 475.900 was renumbered from ORS 475.996 by Legislative Counsel.

First, an inquiry into why the defendant retains recorded communications regarding drug transactions is not suggested by the words that the legislature chose to describe the "commercial drug offense" enhancement. We have previously held that the legislature's choice to identify a "commercial drug offense" according to whether the crime is "accompanied" by three of the listed factors means that proof of an enhancement factor requires only proof that the factor "occurred or existed in conjunction with" the drug offense; not proof that the factor, in the particular case, indicates the existence of a commercial drug offense. *State v. Moore,* 172 Or App 371, 382-83, 19 P3d 911, *rev den,* 332 Or 250 (2001); *see also State v. Kinslow,* 257 Or App 295, 305-06, 304 P3d 801 (2013) (citing *Moore,* 172 Or App at 382-83) (rejecting argument that possession of stolen property could only be considered an enhancement factor if "the possession of that property is somehow related to the drug offense and not just existing contemporaneously with it"). Requiring the sentencing court to consider *why* the particular defendant retains a collection of text messages that memorialize past drug transactions requires the court to go beyond asking whether the retained messages "occurred or existed in conjunction with" a drug transaction.

Second, by making a "commercial drug offense" enhancement depend upon whether the trial court believes that a defendant accidentally retained his collection of drug transaction text messages, the majority's interpretation of ORS 475.900(1)(b)(E) introduces uncertainty that the legislature intended to avoid. As the majority explains, the 1991 legislature adopted the language that is presently codified at ORS 475.900 in an attempt to "fix the vagueness problem" with the "scheme or network" language that was being used in the Oregon Sentencing Guidelines to enhance drug sentences, apparently anticipating our holding in *State v. Moeller,* 105 Or App 434, 441, 806 P3d 130, *rev dismissed,* 312 Or 76 (1991), that the trial court correctly ruled that the "scheme or network" language was unconstitutionally vague. Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 11, Side A (statement of Committee Counsel Gregory A. Chaimov). I equate that purpose with an intention to promote consistency

and certainty in application of the commercial drug offense sentencing enhancement—an intention that is inconsistent with the majority's addition of a mental state inquiry to the term "drug transaction records."

Finally, I do not understand the legislature's intention to reach "fairly large big-time dope dealing" as in any way suggesting an intention that the enhancement factor for drug transaction records should depend on *why* the defendant retains a collection of text messages that memorialize past drug transactions. I agree with the majority that the legislature's intention to address big-time dealers makes it "likely" that the legislature intended that "records" sufficient to indicate a "commercial drug" operation would be of the type that indicate involvement in "'the exchange or buying and selling of commodities esp[ecially] on a large scale.'" 280 Or App at 681 (quoting *Webster's* at 456). I do not agree, however, that the legislature would have intended that the records must be intentionally retained in furtherance of the commercial drug operation in order to indicate involvement in such an operation. Indeed, I believe that, if the legislature could have foreseen the need to answer the question, it would have clarified that records *created* in furtherance of a commercial drug operation provide an equally meaningful indication of a "big-time" operation.

Nevertheless, I conclude that the legislature would not have intended the text messages in this case to qualify as drug transaction records. Defendant's conviction for delivery of a controlled substance was based on an admitted sale of a gram of heroin on March 19, 2012. The conviction was elevated to delivery "as a commercial drug offense" based on text messages exchanged earlier the same day between defendant and "Happy," to whom defendant admitted selling the heroin, as well as another text message that defendant sent three minutes later asking "Carol": "did u want to cop????????"[2] Given the legislative history discussed above, and in the majority opinion, which demonstrates an intention to enhance the penalty for those involved in "big-time dope dealing," I conclude that the legislature would not have

---

[2] Defendant does not dispute that the court could infer that the text was an offer of drugs.

intended the term "drug transaction records" to include a text message offering the single transaction on which the drug conviction is based or an unanswered text message offering to sell drugs. On that basis, I concur with the majority's conclusion that defendant was entitled to a judgment of acquittal on the commercial drug offense enhancement.