Argued and submitted September 28; portion of judgment requiring defendant to pay attorney fees reversed, otherwise affirmed December 14, 2016; petition for review allowed March 31, 2017 (361 Or 311)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GREGORY DANDRA STEWART,
*Defendant-Appellant.*

Marion County Circuit Court
15CR14797; A160496

386 P3d 688

Kali Montague, Deputy Public Defender, argued the cause for appellant. With her on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## GARRETT, J.

A jury convicted defendant of one count of unlawful delivery of methamphetamine for consideration, ORS 475.890 and ORS 475.900(2)(a), and one count of possession of methamphetamine, ORS 475.894. On appeal, defendant challenges only the delivery conviction, arguing that the trial court erred in denying his motion for judgment of acquittal as to the subcategory factor found in ORS 475.900(2)(a), which applies when the delivery in question "is for consideration." Relying on our recent decision in *State v. Villagomez*, 281 Or App 29, 36, 380 P3d 1150 (2016), defendant argues that paragraph (2)(a) does not apply unless the state proves either that defendant completed a drug transaction or that defendant received or entered into an agreement to receive some benefit or detriment from another person.

In *Villagomez*, we held that the state failed to prove that a delivery "was for consideration" within the meaning of a different subsection of the same statute—ORS 475.900 (1)(b)(A)—because it did not show, at a minimum, that the defendant had entered into an agreement to receive consideration at the time he committed the delivery. In this case, the evidence shows, at most, that defendant *attempted* to complete a drug transaction, but there is no evidence in the record that he actually entered into an agreement to receive consideration or completed a drug transaction in exchange for consideration. Accordingly, if *Villagomez* controls, there is insufficient evidence to support the application of ORS 475.900(2)(a) to defendant's delivery conviction. The state contends that *Villagomez* does not control the interpretation of the phrase "is for consideration" in paragraph 2(a). For the reasons explained below, we agree with the state. We conclude that there was sufficient evidence to support a finding of guilt on the "for consideration" subfactor because there was evidence that defendant possessed methamphetamine with the intent to exchange it for money. Thus, the trial court did not err in denying defendant's motion for judgment of acquittal as to that subfactor. In a separate assignment of error, defendant argues that the trial court erred in imposing court-appointed attorney fees in the absence of evidence concerning defendant's financial resources. The state concedes that the trial court erred in that regard. We

accept that concession and reverse the portion of the judgment requiring defendant to pay attorney fees.

When a trial court's denial of a defendant's motion for a judgment of acquittal depends on its interpretation of the statute defining the offense, we review the trial court's interpretation for legal error. *State v. Hunt*, 270 Or App 206, 210, 346 P3d 1285 (2015). Then, viewing the facts in the light most favorable to the state, we determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Id.* at 209. We state the facts in accordance with that standard.

Defendant knocked on a woman's door between 2:00 a.m. and 3:00 a.m. The woman, Otto, mistook defendant for someone else and let him in. Otto soon realized that defendant was not who she thought he was, but she did not tell him to leave. They watched a movie and smoked marijuana. Defendant touched Otto on her leg and hips, and she grew uncomfortable.[1] At one point, defendant followed Otto into her bedroom, and she told him to leave the apartment. Defendant patted the bed and asked if he could stay until later that morning. Otto refused. Defendant said, "Well, I can give you some incentive and we can stay up." Otto refused again.

Defendant then asked for some sandwich bags, which Otto retrieved from the kitchen. Defendant said, "I'm going to do this here on your counter," but then stated, "Actually, I'm going to do this in your bathroom." Otto did not know what he was talking about. He then told Otto that he "needed to make some money." Otto saw defendant remove a bag from his pocket and then move into the bathroom. Defendant spilled a substance that "looked like Epsom salt" on the bathroom floor.

Shortly afterward, defendant asked Otto if he could borrow her phone to call for a ride. She agreed. Defendant then told Otto that she could have what was left of the substance that he had spilled on the bathroom counter and floor, but she responded that she did not want it. Defendant left,

---

[1] Defendant was acquitted of one count of third-degree sexual abuse related to that conduct.

and Otto called 9-1-1. She reported to dispatch that defendant had spilled "white powdery stuff" in the bathroom and had asked her if she "wanted to buy some." She further reported that, when she said no, defendant asked, "Do you know anyone else who does?" and stated several times that he needed to "make some money."

Police responded to the call and stopped defendant near Otto's apartment. Defendant was arrested, and a search of his person revealed bags of methamphetamine. Police also found a black glove containing methamphetamine in the patrol vehicle in which defendant had been transported. The substance on Otto's floor was also determined to be methamphetamine. The total amount of methamphetamine collected at all of those locations was between three and four grams.

Defendant was charged with a number of offenses; the only charge at issue on appeal is Count 2, delivery of methamphetamine for consideration. At the close of the state's case, defendant moved for a judgment of acquittal on the ground that the state had not established the "for consideration" subfactor. The state countered that that subfactor was satisfied in two ways. First, the state pointed to evidence that, by sitting on the bed and offering Otto some "incentive," a rational trier of fact could find that defendant offered methamphetamine to Otto in exchange for sexual favors. Second, the state argued that, because defendant "was separating methamphetamine into multiple bags" and stated that he needed to "make some money," a rational trier of fact could find that defendant delivered methamphetamine "for consideration" by possessing methamphetamine with the intent to sell it. The trial court denied defendant's motion.

The jury convicted defendant of unlawful delivery of methamphetamine, ORS 475.890. The jury also found beyond a reasonable doubt that the "for consideration" subfactor under ORS 475.900(2)(a) applied to defendant's delivery conviction, elevating the offense's crime category from 4 to 6 in the sentencing guidelines grid.

On appeal, defendant does not dispute that the evidence is sufficient to prove that he violated ORS 475.890

even though no transaction was consummated. That is so because, as defendant acknowledges, "delivery" for purposes of that statute is expressly defined to include the "actual, constructive, or attempted transfer" of a controlled substance from one person to another. ORS 475.005(8). Defendant concedes that there was sufficient evidence to prove that he attempted to transfer methamphetamine. *See State v. Rodriguez-Barrera*, 213 Or App 56, 59-60, 159 P3d 1201, *rev den*, 343 Or 224 (2007) ("Possession of a controlled substance with intent to deliver it constitutes an attempted transfer within the meaning of [ORS 475.005(8)]." (Internal quotation marks omitted.)).

Defendant argues, however, that the state presented insufficient evidence that that delivery "is for consideration" for purposes of the penalty enhancement under ORS 475.900(2)(a). Defendant argues that, although an attempted transfer is enough to prove "delivery," the legislature did not intend the enhanced penalty to apply absent proof of a completed transfer or a preexisting agreement to exchange drugs for consideration.[2] The state responds that defendant's argument is not supported by the statutory text or legislative history.

To resolve whether the trial court erred in denying defendant's motion, we must construe the meaning of the statutory phrase "is for consideration" as found in ORS 475.900(2)(a). We do so using the framework set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), *as modified by State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). We first look to "the text and context of the statute, which are the best indications of

---

[2] After our decision in *Villagomez* was published, defendant submitted a memorandum of additional authorities pursuant to ORAP 5.85, arguing that *Villagomez* supports defendant's argument that the state set forth insufficient evidence to prove the "for consideration" subfactor because there is no record evidence that defendant "actually received, or entered into an agreement to receive, something in exchange for the transfer of drugs." (Internal quotation marks omitted.) Although defendant did not advocate for the precise construction adopted in *Villagomez* below or in his opening brief, we have an independent obligation to correctly construe Oregon law, and the variance in defendant's position does not preclude our analyzing the statute in light of *Villagomez*. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, [an appellate court] is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

the legislature's intent." *State v. Walker*, 356 Or 4, 13, 333 P3d 316 (2014). We also consider the statute's legislative history, and we give that history weight to the extent that it illuminates the statute's intended meaning. *Id.*; *Gaines*, 346 Or at 172. If the statute's meaning is still unclear, we "may resort to general maxims of statutory construction." *Walker*, 356 Or at 13.

First, we turn to the pertinent text. The legislature has not defined the phrase "is for consideration." When words lack a specialized meaning, we presume that the legislature intended those words to carry their ordinary meaning. *DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016); *see also Jenkins v. Board of Parole*, 356 Or 186, 194, 335 P3d 828 (2014) (noting that dictionary definitions are "useful" when the legislature has not defined the words comprising a disputed phrase). The word "is" is the simple present tense of the verb "to be." *Webster's Third New Int'l Dictionary* 189 (unabridged ed 2002); *The Chicago Manual of Style* § 5.142, 183 (15th ed 2003); *see Kohring v. Ballard*, 355 Or 297, 304 n 2, 325 P3d 717 (2014) (noting that *Webster's* has a "descriptive focus, reporting ordinary usage" (internal quotation marks omitted)). As relevant here, the dictionary defines the verb "to be" as to "have a (specified) qualification or characterization" or "to exist either absolutely or * * * under conditions specified." *Webster's* at 189; *see Larsen v. Board of Parole*, 231 Or App 59, 63-64, 219 P3d 28 (2009), *rev den*, 348 Or 13 (2010) ("We look to the context in which the word appears to determine which meaning the legislature intended."). The word "for," as relevant here, is defined as "in order to bring about or further"; "with the purpose or object of"; "in order to obtain * * * or gain"; or "so as to secure as a result." *Webster's* at 886. The term "consideration" has a "'well-defined legal meaning'" that we presume the legislature intended. *Villagomez*, 281 Or App at 36 (quoting *Dept. of Transportation v. Stallcup*, 341 Or 93, 99, 138 P3d 9 (2006)). Accordingly, we presume that the legislature intended "consideration" to mean "some benefit from or detriment incurred by another person, *e.g.*, a payment or a promise of payment." *Id.* ("Consideration is that which one party provides to the other in exchange for entering into [a] contract." (Brackets in original; internal quotation marks omitted.)).

Thus, based on the plain meaning of the phrase "is for consideration" as found in ORS 475.900(2)(a), the state need only prove that the defendant committed unlawful delivery of one of the listed substances, and that the delivery was characterized by a purpose to obtain something of value in return, such as payment or some other benefit. By its terms, paragraph (2)(a) can apply to a delivery regardless of the state's *theory* of "delivery"; that is, nothing in the statutory text limits application of paragraph (2)(a) to completed transfers. *Cf. State v. Stout*, 281 Or App 263, 270, 382 P3d 591 (2016) (reasoning that, because nothing in the statutory text limited application of a heightened pleading requirement to a specific theory of liability, by the statute's terms, the requirement applied regardless of whether the state relied upon an inchoate theory of liability). In short, the text of paragraph (2)(a), read together with the definition of a delivery as including an "attempted transfer," suggests that the "for consideration" subfactor can be established by evidence that a defendant attempted to transfer drugs with the purpose of exchanging the drugs for something of value.

This interpretation is consistent with the legislative history of ORS 475.900(2)(a). Before 1991, crime category designations for unlawful delivery of a controlled substance were set forth in the Oregon Sentencing Guidelines. *State v. Rankins*, 280 Or App 673, 681, 382 P3d 530 (2016). Under the Guidelines, a delivery offense was designated Crime Category 8 if the delivery "occurred as part of a drug cultivation, manufacture or a delivery scheme or network." *Former* OAR 253-04-002(3) (Sept 1, 1989). All other delivery convictions were designated as Crime Category 4. *Oregon Sentencing Guidelines Implementation Manual* 38 (1989). In 1991, the legislature passed House Bill (HB) 2930, replacing the "scheme or network" designation with a new "commercial drug offense" designation, which was also classified as Crime Category 8.[3] Or Laws 1991, ch 260, § 1. In addition, the legislature created a middle tier for delivery offenses

---

[3] In *State v. Moeller*, 105 Or App 434, 441, 806 P2d 130, *rev dismissed*, 312 Or 76 (1991), we held that the phrase "scheme or network" was unconstitutionally vague. While *Moeller* was pending, HB 2390 was introduced in the legislature to "fix the vagueness problem." *State v. Rankins*, 280 Or App 673, 682, 382 P3d 530 (2016).

that were "for consideration" but were neither "commercial drug offenses" nor involved "substantial quantities of a controlled substance," classifying those offenses as Crime Category 6. Or Laws 1991, ch 690, § 2. All other delivery offenses remained designated as Crime Category 4. Or Laws 1991, ch 690, § 3.

The legislative history makes clear that, in establishing this middle-tier designation applicable to deliveries "for consideration," the legislature sought to distinguish between offenders who sell drugs (although not on a scale or in a manner sufficient to qualify for Crime Category 8) and those who merely give them away. *See, e.g.*, Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 11, Side A (statements of Rep Tom Mason) (explaining that the term "consideration" is "lawyer talk for sale" and the phrase was intended to limit application of the enhanced penalty to those who "sell" drugs). In other words, the point was to treat small-scale drug dealing less seriously than large-scale or "commercial" drug activity but more seriously than sharing drugs with friends. There is no indication that the legislature sought to further distinguish those who successfully obtain or arrange for payment from those who attempt to transfer drugs in exchange for payment, but fail to successfully obtain or arrange for that payment.

Contrary to defendant's view, nothing in the legislative history supports a conclusion that the legislature intended to limit application of ORS 475.900(2)(a) to drug transactions involving a completed arrangement for payment, particularly because the statutory text does not carve out an exception to the long-standing definition of "delivery," which includes drug transfers that are necessarily incomplete. *See* ORS 475.005(8) ("'Deliver' or 'delivery' means the actual, constructive or attempted transfer * * * from one person to another of a controlled substance."); *State v. Stark*, 354 Or 1, 10, 307 P3d 418 (2013) (presuming that, when passing legislation, the legislature is aware of existing statutes). In fact, the bill's sponsor, Representative Tom Mason, emphasized on several occasions that "delivery" as used in Oregon's drug-related criminal laws is a "broad" term that could encompass more conduct than just completed sales.

*See, e.g.*, Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2390, Jan 30, 1991, Tape 11, Side A (statement of Rep Tom Mason) (explaining that "the word consideration is a limiting word because the term 'delivery' in our criminal law, in our drug-related law, is a very, very broad term"); Tape Recording, Senate Committee on Judiciary, HB 2390, May 24, 1991, Tape 188, Side A (statement of Rep Tom Mason) (explaining that the state could prove delivery under a "constructive delivery" theory, whereby a defendant could be found guilty of delivery simply by virtue of possessing large amounts of a drug). The fact that the legislature enacted HB 2390 with the expressed understanding that "delivery" has a broad meaning under Oregon law—and gave no indication that it intended a different meaning to be associated with HB 2390—is strong evidence that the legislature intended the long-established definition of delivery to be incorporated into the new, middle-tier, Crime Category 6 designation. *See Walker*, 356 Or at 22 ("[When] the legislative history demonstrates that the legislature was aware of the expansive nature of an enactment's text, yet chose not to narrow it, we are constrained to interpret the statute in a way that is consistent with that text, which is, in the end, the best indication of the legislature's intent."). In short, the legislative history provides additional confirmation that, in enacting ORS 475.900(2)(a), the legislature simply meant to attach greater consequences to the "delivery" (including, by definition, an attempted transfer) of drugs if it is done with the purpose of obtaining something of value in return.

In urging that a completed transfer or an agreement to transfer for consideration is required, defendant argues that our recent decision in *Villagomez* controls our interpretation of the phrase "is for consideration" as used in ORS 475.900(2)(a). In *Villagomez*, we interpreted the phrase "was for consideration" in a different provision of the same statute, ORS 475.900(1)(b)(A). 281 Or App at 31. Under ORS 475.900(1), a listed drug offense may be classified as Crime Category 8 in either of two ways. First, paragraph (1)(a) provides that a violation of one of the listed statutes is classified as Crime Category 8 if the violation "constitutes delivery or manufacture of a controlled substance" and

"involves substantial quantities of a controlled substance." ORS 475.900(1)(a). Second, paragraph (1)(b) designates as a "commercial drug offense" the possession, delivery, or manufacture of a controlled substance when accompanied by at least three of 11 listed factors. The factor at issue in *Villagomez* is found at subparagraph (1)(b)(A), which provides, "The delivery was of heroin, cocaine, methamphetamine, lysergic acid diethylamide, psilocybin or psilocin and *was for consideration.*" (Emphasis added.)

In *Villagomez*, the defendant was apprehended while in possession of more than 141 grams of methamphetamine divided into two bags, along with over $4,000 in cash, a ledger, and two cell phones. 281 Or App at 32. The state charged defendant with both possession and delivery of methamphetamine. *Id.* The state relied on an "attempted transfer" theory of liability for delivery based on evidence that defendant was in possession of an amount of methamphetamine inconsistent with personal use, accompanied by other indicia of drug dealing. *See id.* at 33 (citing *State v. Boyd*, 92 Or App 51, 54, 756 P2d 1276, *rev den*, 307 Or 77 (1988)). In the indictment, the state alleged that the delivery offense was a "commercial drug offense" because the delivery involved over eight grams of methamphetamine, ORS 475.900(1)(b)(K)(iii); the defendant was in possession of over $300 in cash, ORS 475.900(1)(b)(B); the defendant was in possession of "drug records," ORS 475.900(1)(b)(E); and the delivery "was for consideration," ORS 475.900(1)(b)(A). The trial court denied defendant's motion for a judgment of acquittal on the "for consideration" factor, and the jury subsequently found for the state on that factor, along with two other commercial-drug-offense factors. *Id.* at 33-34. On appeal, the defendant argued that the "for consideration" commercial drug offense factor in ORS 475.900(1)(b)(A) requires proof of actual consideration—in other words, proof of a preexisting agreement for consideration or a completed transfer—while the state argued that it was sufficient that a delivery was undertaken with the intent of obtaining consideration. *Id.* at 35.

Based on the plain meaning of the statutory terms, we first concluded that "a delivery of drugs 'was for

consideration' if the defendant was induced to deliver drugs, *i.e.*, he or she engaged in an actual, attempted, or constructive transfer of the drugs to another person, in exchange for some benefit from or detriment incurred by another person, *e.g.*, a payment or a promise of payment." *Id.* at 36. We then addressed the state's argument that "consideration can be *inferred* under ORS 475.900(1)(b)(A)" based on the presence of other factors suggesting "an intent to transfer drugs for money, goods, or services." *Id.* (internal quotation marks omitted; emphasis added). We rejected that interpretation, concluding that "the legislature intended that the 'for consideration' commercial drug offense factor have a distinct and separate meaning from any one or more of the other commercial drug offense factors." *Id.* at 36. Accordingly, in light of the purpose and operation of the "commercial drug offense" enhancement, we reasoned:

"[T]he inference that an attempted delivery is 'for consideration' in the sense used by the state—that the defendant possessed drugs with the intent or hope of transferring them in exchange for money—arises whenever the state proves any three of the commercial drug offense factors, because proving those factors will demonstrate that the defendant was engaged in 'commerce' related to illegal drugs. Under the state's interpretation of the phrase '[t]he delivery * * * was for consideration'—that it could be shown by evidence of two other commercial drug offense factors such as possession of cash under ORS 475.900(1)(b)(B) and possession of a large quantity of drugs under ORS 475.900(1)(b)(K)— ORS 475.900(1)(b)(A) would be meaningless surplusage. It would add nothing to the other commercial drug offense factors, and it would be met in every otherwise commercial drug offense case involving a delivery.

"In contrast, * * * [i]nterpreting ORS 475.900(1)(b)(A) to require proof of 'actual consideration' means that a delivery could satisfy other factors in ORS 475.900(1)(b), indicating that the defendant is operating or participating in a commercial drug operation, without automatically satisfying ORS 475.900(1)(b)(A). Instead, to prove the 'for consideration' factor, the state would also have to prove something else—that the defendant actually received, or entered into an agreement to receive, something in exchange for the transfer of the drugs—thereby giving effect to ORS 475.900(1)(b)(A)."

*Id.* at 38-39 (citation omitted). Put more succinctly, we explained that "the 'for consideration' factor is a way to prove the commercial character of the delivery. The otherwise commercial character of the delivery, on the other hand, is not a way to prove that the transaction was for consideration." *Id.* at 36-37. Accordingly, we concluded:

> "[T]o prove that a 'delivery * * * was for consideration' within the meaning of ORS 475.900(1)(b)(A), the state must show that the defendant has received, or has entered into an agreement to receive, some benefit from or detriment incurred by another person at the time that he or she commits a delivery. That is so whether that delivery is an actual, attempted, or constructive transfer of drugs."

*Id.* at 39. In a footnote, we made clear that our interpretation did not preclude application of the "for consideration" factor when the state proceeds on an "attempted transfer" theory of liability:

> "If the state proves that a defendant has entered into an agreement to transfer drugs for consideration, or has received payment in advance of transferring drugs, it has proved that the defendant committed an *attempted* delivery for *actual* consideration, even if the defendant did not complete the delivery."

*Id.* at n 9.

In this case, defendant argues that *Villagomez*'s interpretation of ORS 475.900(1)(b)(A) controls, and that we must similarly interpret ORS 475.900(2)(a) to require proof of either a completed transaction, receipt of payment, or a preexisting agreement to exchange drugs for something of value. It is true that we ordinarily assume that the legislature intends the same terms to have the same meaning in related statutes. *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011); *see also Tharp v. PSRB*, 338 Or 413, 422, 110 P3d 103 (2005) ("When the legislature uses the identical phrase in related statutory provisions that were enacted as part of the same law, we interpret the phrase to have the same meaning in both sections."). However, that assumption of consistency is only an assumption, and we do not adhere to it when something in the statute's text or context suggests a divergent legislative intent. *Village at Main Street*

*Phase II v. Dept. of Rev.*, 356 Or 164, 175, 339 P3d 428 (2014). Here, based on significant differences in text and statutory structure, we conclude that the legislature did not intend the phrase "was for consideration" in subparagraph (1)(b)(A) and the phrase "is for consideration" in paragraph (2)(a) to carry precisely the same meaning.

At the outset, it is essential to frame the interpretive question before us. The dispute is not over the meaning of the term "consideration"; we adhere to the well-settled meaning of consideration as stated in *Villagomez*. *See* 281 Or App at 36 ("[A] delivery of drugs 'was for consideration' if the defendant was induced to deliver drugs *** in exchange for *some benefit from or detriment incurred by another person, e.g., a payment or a promise of payment*." (Emphasis added.)). Instead, we must determine whether the legislature intended both phrases—"was for consideration" and "is for consideration"—to refer to the same relationship between the conduct (delivery) and the character of that conduct (for consideration). More precisely, we must determine whether the legislature intended ORS 475.900(2)(a) to require proof that a defendant completed the process of obtaining consideration (or an agreement for consideration) for the delivery in question, or whether the legislature intended paragraph (2)(a) to apply to deliveries undertaken with the *purpose* of obtaining consideration, even if consideration had not yet been obtained or arranged.

In resolving that question, the legislature's use of different verb tenses is evidence that the legislature did not necessarily intend the two phrases to have the same meaning. ORS 475.900(1)(b)(A) is written in the past tense ("was for consideration"), whereas ORS 475.900(2)(a) is written in the present tense ("is for consideration"). We assume that the legislature's choice of verb tense is purposeful, and verb tense may be "a significant indicator" of legislative intent. *Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994); *see also Cuff v. Department of Public Safety Standards*, 345 Or 462, 470, 198 P3d 931 (2008) (employing "simple grammar," including the legislature's choice of verb tense, to determine whether a statute has retroactive applicability). When the legislature uses different verb tenses within one statute, it is indicative of a legislative intent to refer to "different

relative points in time." *See State v. Root*, 202 Or App 491, 497, 123 P3d 281 (2005) (concluding that "the voters used different verb tenses intentionally to indicate different relative points in time" within the same statute).

In general, the use of the past tense "denotes an act, state, or condition that occurred or existed at some point in the past." *The Chicago Manual of Style* § 5.117, 178 (15th ed 2003). In other words, it "suggests a state of affairs that existed at the conclusion of the criminal episode, not a state of mind that attached to the defendant's conduct during the episode." *State v. Turnidge (S059155)*, 359 Or 364, 502, 374 P3d 853 (2016) (reasoning that the use of "the past tense form of the verb 'to be'"—*i.e.*, "*was* murdered"—"suggests a state of affairs that existed at the conclusion of the criminal episode, not a state of a mind that attached to the defendant's conduct during the episode"); *see also State v. Teixeira*, 259 Or App 184, 196, 313 P3d 351 (2013) (reasoning that when a statute is phrased in the past tense, it has a "'distinctly retrospective and completed-act focus'" (quoting *State v. Allred*, 165 Or App 226, 230, 995 P2d 1210 (2000)). The legislature's choice to use the past tense in subparagraph (1)(b)(A) is consistent with our conclusion in *Villagomez* that the phrase "was for consideration" requires proof that the defendant had already received consideration or, at a minimum, entered into an agreement to receive consideration; in other words, "was for consideration" required proof of a completed act related to consideration.

The use of the past tense in ORS 475.900(1)(b)(A) is particularly significant because the legislature predominantly uses the simple present tense in the criminal code. *See State v. Gonzalez-Valenzuela*, 358 Or 451, 466, 365 P3d 116 (2015) (observing that the legislature has used the simple present tense throughout Oregon's criminal code to signify "timeless legal facts"); *see, e.g.*, ORS 164.015 ("A person *commits* theft when, with the intent to deprive another of property * * *, the person * * * *[t]akes, appropriates, obtains* or *withholds* such property from an owner thereof[.]" (Emphases added.)); ORS 164.383 ("A person commits the offense of unlawfully applying graffiti if the person, having no right to do so * * * intentionally *damages* property of another by applying graffiti to the property." (Emphasis

added.)). For that reason, the legislature's atypical use of the past tense in ORS 475.900(1)(b)(A) reinforces our conclusion that the legislature intended the phrase "was for consideration" to refer to a different relative point in time than the phrase "is for consideration." Consequently, we conclude that the phrase "was for consideration" in subparagraph (1)(b)(A) refers to consideration as a completed act, while the phrase "is for consideration" in paragraph (2)(a) refers to either actual or future consideration.

We find further support for our conclusion in the distinct purposes of ORS 475.900(1)(b)(A) and (2)(a) as reflected in the statutory structure. As discussed above, subparagraph (1)(b)(A) is one of 11 commercial drug offense factors used to evaluate whether a defendant committed a drug offense as part of an ongoing criminal drug enterprise. *Rankins*, 280 Or App at 681 n 3; *see Villagomez*, 281 Or App at 37 (reasoning that it is "apparent from the term 'commercial drug offense,' the purpose of those factors is to determine whether a person is selling drugs on a large scale"). Our conclusion in *Villagomez* rested in large part on that purpose and structure, and particularly on the need to give independent effect to subparagraph (1)(b)(A) within that structure. That same reasoning does not extend to paragraph (2)(a), and we decline to ignore what the legislature appears to have intended through its use of different verb tenses. *Cf. Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 211-12, 179 P3d 633 (2008) (declining to construe the same term to carry the same meaning in two related statutes because the two phrases using the term were not "identical" and to do otherwise would render one of the provisions nonsensical). Thus, based on the plain, ordinary meaning of paragraph (2)(a) in context, and the lack of any contrary intention reflected in the legislative history, we conclude that the legislature intended Crime Category 6 to apply when a defendant commits unlawful delivery with the purpose of obtaining something of value in return, even if the defendant has not yet received payment or a promise of payment at the time he commits the delivery.

Because we conclude that ORS 475.900(2)(a) applies to any qualifying delivery undertaken for the purpose of obtaining something of value—including those proven on

an "attempted transfer" theory—we conclude that there was sufficient evidence to support application of Crime Category 6 in this case. When viewed in the light most favorable to the state, the record establishes that defendant was dividing methamphetamine into separate baggies while stating that he "needed to make some money." Based on those facts, a rational trier of fact could find beyond a reasonable doubt that defendant possessed methamphetamine with the intent to transfer it to another person in exchange for money. Thus, the state set forth sufficient proof that defendant delivered methamphetamine under an "attempted transfer" theory, *see Rodriguez-Barrera*, 213 Or App at 59-60, and that delivery satisfied the "for consideration" subfactor found in ORS 475.900(2)(a).[4] Accordingly, the trial court did not err in denying defendant's motion for a judgment of acquittal as to the "for consideration" subfactor.

Finally, we accept the state's concession that the trial court plainly erred in requiring defendant to pay attorney fees when the record was silent as to defendant's "existing or potential financial resources." *See State v. Pendergrapht*, 251 Or App 630, 634, 284 P3d 573 (2012) ("A court cannot impose fees based on pure speculation that a defendant has funds to pay the fees or may acquire them in the future."). For the reasons stated in *State v. Coverstone*, 260 Or App 714, 716-17, 320 P3d 670 (2014), we exercise our discretion to correct the error and reverse the portion of the judgment requiring defendant to pay attorney fees.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.

---

[4] Based on our conclusion, we need not address whether the evidence was sufficient such that a rational trier of fact could find that defendant offered Otto methamphetamine in exchange for sexual favors.